**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **AUSHANIQUE LEWIS**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br>v.<br><br>**DISA GLOBAL SOLUTIONS, INC.**<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br><br><br><br>**DEMAND FOR JURY TRIAL** |

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff, Aushanique Lewis ("Plaintiff") on behalf of herself and all others similarly situated ("Class Members"), brings this Class Action Complaint ("Complaint") against Defendant DISA Global Solutions, Inc. ("DISA" or "Defendant"), and alleges, upon personal knowledge as to her own actions and her counsels' investigations, facts that are a matter of public record and upon information and belief as to all other matters, as set forth herein.

## INTRODUCTION

1. Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard personally identifiable information including, without limitation, full names, Social Security numbers, driver's license numbers, other governmental identification or financial account numbers (these types of information being thereafter referred to, collectively, as "personally identifiable information" or "PII" or "Private Information").

2. This is a civil action seeking monetary damages and injunctive and declaratory relief from Defendant DISA.

3. Plaintiff seeks to hold Defendant responsible for not ensuring that the PII[1] was maintained in a manner consistent with industry standards.

4. Upon information and belief, in early 2024, or about April 2024, DISA became aware that there was a data security incident within the data systems maintained by the Defendant, which resulted in the exposure of and unauthorized access to certain personal and/or protected information maintained by DISA.

5. This breach resulted in the unauthorized disclosure of the Personal Information of Plaintiff and the Class Members, including names, Social Security numbers, and other protected information (the "Data Breach").

6. As more fully described herein, the Plaintiff and Class Members have sustained significant injury and damages as a result of the Data Breach that DISA failed to prevent and/or permitted to occur.

7. DISA is responsible for the resulting misuse of the Plaintiff and Class Members Personal Information and fraudulent activity, including monetary damages including out- of-pocket expenses, including those associated with the reasonable mitigation measures they were forced to employ, and other damages.

8. As a result of the Defendant's tortious conduct the Plaintiff and Class members are also confronted with the enhanced risk of additional fraud, identity theft and other misuse as a result of their sensitive PII falling into the hands of cybercriminals.

[1] PII includes all information that on its face expressly identifies an individual, consistent with 2 C.F.R. § 200.79; it is also generally defined to include certain identifiers that do not on its face name an individual, however are particularly sensitive and/or valuable if it was in the possess of bad actor (for example, Social Security numbers, driver's license numbers, passport numbers, or banking information).

9. DISA, which is headquartered in Houston, Texas, is a self-proclaimed industry-wide leader with expertise in background screening, drug and alcohol testing, and compliance solutions.

10. The Defendant performs worker background checks and drug and alcohol testing as a third-party administrator for employers and serves more than 55,000 customers (hereinafter, the "Clients" or "Defendant's Clients") across the country.

11. To provide these services, and in the ordinary course of DISA's business, Defendant acquires, possesses, analyzes, and otherwise utilizes Plaintiff's and Class Members' PII.

12. The Plaintiff and Class members Personal Information, which was entrusted to Defendant on the mutual understanding that Defendant would protect against disclosure was targeted, compromised, and unlawfully accessed due to the Data Breach.

13. DISA, had a duty and an obligation to implement reasonable data security practices necessary to protect the sensitive, confidential and personal information entrusted to them; as it was reasonably foreseeable that the unauthorized exposure of PII to unknown and nefarious third parties, particularly hackers, would no doubt result in damages and harm to the people whose information was disclosed, the harm includes financial identity theft and other long ranging problems.

14. Attempting to mitigate the resulting risks requires taking a number of preventive or protective measures, resulting in the expenditure of significant resources, including money and time to monitor their credit, financial accounts, health records and email accounts. If DISA had implemented appropriate and reasonable data security measures, this would not have occurred.

15. Despite the claims by the Defendants that they followed the best practices and were compliant with the applicable laws, including FCRA, this massive breach occurred; resulting in the disclosure of the Private Information of DISA's clients.

16. DISA admitted in a notice posted on its website, "Although our forensics investigation could not definitively conclude the specific information procured, the affected files contained individuals' personal information, which came into our possession due to the employment screening services we provide employers and prospective employers." [2]

17. The purported "disclosure" by the defendants lacked any specificity thereby failing to provide meaningful information to the Class Members of the Data Breach's critical facts. Without these specifics, it severely hampered the ability of the Plaintiff's and Class Members' to mitigate the resulting harms from the Data Breach.

18. Plaintiff and Class Members now face a heightened and imminent risk of fraud, identity theft, health insurance benefit misappropriation, health privacy intrusion, and private information dissemination on the dark web. This risk may persist for their lifetimes.

19. The Plaintiff and Class Members have suffered tangible injuries, including the diminished value of their private information, lost time and opportunity costs from mitigating the breach's consequences, loss of benefit of the bargain, and actual misuse of compromised data, such as increased spam communications.

20. As a result, Plaintiff and Class Members must expend significant additional time, money, and energy to protect themselves from these potential crimes to the extent possible. All of this will need to be done to attempt to thwart the clear intent of hackers when they break into

[2] See: https://disa.com/notice

databases to steal this information which is to monetize this data with fraudulent behavior and transactions.

21. The Plaintiff on behalf of all Class Members assert the following causes of action against the Defendant DISA: (a) Negligence and Negligence *Per Se*; (b) Implied Breach of Contract; (c) Breach of Fiduciary Duty; (d) Intrusion Upon Seclusion/Invasion of Privacy; (e) Unjust Enrichment and (f) Declaratory Judgment and Injunctive Relief; which will include the establishment of data security measures to protect the PII in the hands of misfeasors.

## **PARTIES**

22. The Plaintiff, AUSHANIQUE LEWIS is, and at all times mentioned herein, an individual citizen who resides in Columbus, Ohio.

23. It was the understanding of the Plaintiff, and reasonably believed and trusted that her PII provided to the DISA would be maintained confidential and kept secure and its use would be limited to the purposes authorized.

24. Defendant, DISA Global Solutions, Inc. is a foreign for-profit corporation, organized in Delaware with its corporate headquarters in the state of Texas. Its principal place of business is located at: 11740 Katy Freeway, Suite 900, Houston, TX 77079. Its resident agent for service of process is CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201.

## **JURISDICTION**

25. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because it is a class action involving over 1,000 members; the minimal diversity requirement is met as Plaintiff is an Ohio resident and Class members are U.S. citizens, while Defendant is a Texas company; and the controversy exceeds $5 million, excluding interests and costs.

26. The acts and omissions underlying Plaintiff's claims occurred within this District.

27. Venue is proper under 28 U.S.C. § 1391(b)(1) since Defendant's principal place of business is located in the Houston Division of the Southern District of Texas.

## **BACKGROUND FACTS**

28. The Plaintiff and Class Members are current and former clients of DISA.

29. As part of their drug screening tests, the Plaintiff and Class members provided the Defendant with sensitive personally identifiable information.

30. It is believed that the Defendant promised to maintain confidentiality and provide adequate security for this data through its privacy policy and statutory compliance.

31. On its website, the Defendant disclosed a cyber incident on April 22, 2024, where an unauthorized party accessed a limited portion of its network between February 9, 2024, and April 22, 2024. The affected files contained personal information, but the specific data accessed could not be determined.

32. Given the sensitive nature of the information, the Defendant is obligated to protect client data, adhere to industry standards, comply with federal and state laws, and notify clients of unauthorized disclosures.

33. By collecting and using clients' private information, the Defendant assumed a duty to protect it from unauthorized disclosure, which it failed to fulfill.

34. The Defendant's services rely on the submission of private information from clients.

35. Clients trusted the Defendant to keep their information confidential and secure, but this trust was breached when the Defendant failed to prevent unauthorized disclosures.

36. DISA's actions and inactions directly led to the data breach, compromising the private information of the plaintiff and class members.

37. On February 21, 2025, it was reported that DISA Global Solutions filed a notice of a data breach to the Maine Attorney General's office, nearly a year after the cyber incident occurred.

38. The breach compromised the personal information of approximately 3.3 million individuals, including Social Security numbers, credit card account numbers, and other sensitive data.

39. In the breach notification, it was disclosed that hackers accessed DISA's network, exposing sensitive information such as Social Security numbers, credit card numbers, driver's license numbers, and government identification.

40. DISA serves a significant client base, including many Fortune 500 companies. The breach highlights the vulnerability of companies handling large volumes of personal data.

41. The details surrounding the data breach, including the perpetrator, root cause, exploited vulnerabilities, and remedial measures, remained undisclosed. Despite the vested interest of the Plaintiff and Class Members in safeguarding their private information, these crucial details have not been clarified or explained to them.

42. The data breach was a direct consequence of the Defendant's failure to implement and adhere to fundamental security protocols and its own policies, thereby compromising the protection of clients' personally identifiable information (PII). The Defendant is bound by obligations under the FTC Act, contractual agreements, common law, and industry standards to maintain the confidentiality and security of this sensitive information.

43. The defendant was fully aware that the private information it collected was highly sensitive and valuable to those who might misuse it. A breach of its systems would expose this information, significantly increasing the risk of identity theft, financial fraud, and unauthorized access to sensitive health data.

44. These risks are not hypothetical; numerous high-profile breaches have occurred at companies like Equifax, Facebook, Yahoo, Marriott, and Anthem. Personal identifiable information (PII) is a prime target for hackers due to its high value. The proliferation of anonymous cybercrime forums on the Dark Web has created a thriving marketplace for stolen data, making it easy for hackers to sell compromised information.

45. The prevalence of data breaches and identity theft has surged in recent years, resulting in significant economic losses for individuals, businesses, and government entities.

46. Every year, the number of publicly disclosed data breaches increases, exposing billions of records, and this increase commensurate with the increase in identity theft complaints.

47. Cybercriminals increasingly target personally identifiable information (PII) due to its high value. The extensive data compromised in breaches makes individuals vulnerable to various forms of fraud, including identity theft, tax fraud, and financial fraud. It is well known that PII records are highly valuable to criminals, often selling for significantly more than credit card information.

48. Victims of data breaches often face severe consequences, including false accusations of drug trafficking, employment difficulties, or even job loss. Identity thieves can exploit stolen data to impersonate victims, harass them, or track their activities. With just a name and date of birth, thieves can use social engineering techniques—such as phishing or spam messages—to obtain more sensitive information like login credentials or Social Security numbers.

As technology advances, hackers can create detailed profiles by linking disparate pieces of information, a phenomenon known as the "mosaic effect."

49. Even if certain data was not directly compromised in a breach, unauthorized parties can still use stolen information to access email and financial accounts, facilitating various forms of fraud. The FTC advises victims to take protective measures, including placing fraud alerts, reviewing credit reports, removing fraudulent charges, and freezing credit. However, these steps only mitigate the risks and do not guarantee complete protection against identity theft.

50. Stolen personal data, such as Social Security numbers and other personally identifiable information (PII), can be used for numerous crimes, including identity theft, credit card fraud, utility fraud, bank fraud, obtaining false identification, claiming government benefits, and filing fraudulent tax returns. These activities underscore the importance of safeguarding personal information to prevent such misuse.

51. Social Security numbers, compromised by the data breach, are particularly sensitive because they can be used for various fraudulent activities and are difficult to change. The Social Security Administration warns that losing a Social Security number can lead to identity theft and financial fraud.

52. Identity thieves can use the number to obtain additional personal information, apply for credit in the victim's name, and damage their credit by failing to pay bills. Victims may only discover this when they are denied credit or receive calls from unknown creditors.

53. Changing a stolen Social Security number is challenging. It requires significant paperwork and evidence of actual misuse, meaning preventive measures are not allowed. Even if a new number is obtained, it may not be effective, as credit bureaus and banks can quickly link it to the old number, inheriting any existing issues. There can be a significant delay between when

harm occurs and when it is discovered, and between when personal identifiable information (PII) is stolen and misused.

54. According to the U.S. Government Accountability Office, stolen data may be held for over a year before being used for identity theft, and fraudulent use can continue for years after the data is sold or posted online.[3] Even without financial information, stolen PII poses a substantial risk of identity theft, particularly through targeted attacks like social engineering and spear phishing. These methods use stolen PII to gain trust and deceive victims into providing additional information. Given the value of PII to cybercriminals, the defendant should have been aware of the foreseeable risks of inadequate cybersecurity measures.

55. The Defendant failed to employ reasonable security measures suitable for the sensitive information they maintained for the Plaintiff and Class Members. This oversight led to the exposure of private data, which could have been prevented through practices like encryption and timely deletion.

56. To prevent the data breach, the Defendant should have properly encrypted and protected their equipment and files containing private information. Implementing robust security measures, as recommended by the U.S. Government, would have been effective. These measures include:

- Conducting awareness and training programs.

---

[3] *Report to Congressional Requesters, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), https://www.gao.gov/new.items/d07737.pdf.

- Utilizing strong spam filters and email authentication technologies like SPF, DMARC, and DKIM.
- Scanning emails for threats and filtering executable files.
- Configuring firewalls to block malicious IP addresses.
- Regularly scanning for viruses and malware.
- Managing privileged accounts based on the principle of least privilege.

57. Given the storage of private information for current and former clients, the Defendant should have implemented these measures to prevent cyberattacks. The occurrence of the data breach indicates a failure to adequately implement these security protocols, resulting in unauthorized access to the private data of over 800,000 individuals, including the Plaintiff and Class Members.

**FTC Guidelines Prohibit Engaging in any Unfair or Deceptive Acts or Practices**

58. The Federal Trade Commission Act prohibits businesses from engaging in unfair or deceptive acts or practices, including failing to maintain reasonable data security for sensitive personal information, which the FTC considers an unfair practice.

59. The FTC has issued guidelines emphasizing the importance of integrating data security into all business decisions. These guidelines recommend protecting customer information, securely disposing of unnecessary data, encrypting stored information, identifying network vulnerabilities, and implementing policies to address security issues.

60. The FTC advises companies to limit data retention to only what is necessary, restrict access to sensitive data, use complex passwords, monitor for suspicious activity, and ensure third-party providers implement reasonable security measures.

61. Enforcement actions have been taken against businesses that fail to protect customer data adequately, with orders clarifying the necessary measures to meet data security obligations.

62. DISA failed to implement basic data security practices, constituting an unfair act under the FTC Act. As a drug testing provider, Defendant was aware of its obligations to protect client data and the potential consequences of failing to do so.

63. Industry standards for drug screening entities include educating employees, using strong passwords, multi-layer security, encryption, multi-factor authentication, and limiting access to sensitive data. Defendant failed to follow these standards and did not comply with frameworks like the NIST Cybersecurity Framework and the Center for Internet Security's Critical Security Controls.

64. The failure to protect sensitive information puts individuals at a significant risk of identity theft and fraud. Stolen health data can be used for malicious activities, including extortion and financial fraud. The value of personal data is substantial, with sensitive health information selling for hundreds of dollars on the black market.

65. The consequences of a data breach are long-lasting, with victims often experiencing financial repercussions and life-threatening consequences.

66. The Private Information maintained by the Defendant is highly sensitive and vulnerable to misuse by third parties for identity theft and fraud. Had the Defendant remedied its security deficiencies, followed industry guidelines, and adopted expert-recommended measures, it could have prevented the ransomware attack and subsequent theft of client data.

67. The compromised PII is highly valuable to hackers and thieves, as it can be combined with other data to identify individuals or access additional information. This is facilitated

by technological advancements and the "mosaic effect," where disparate data pieces are linked to create a comprehensive profile. Unauthorized parties have likely used and will continue to misuse this information to obtain more data from the Plaintiff and Class Members.

68. Even without payment card information, the stolen data can be used to access email and financial accounts, facilitating fraudulent activities. The exposure of Private Information diminishes its value and deprives customers of the full monetary value of their transactions. Consequently, the compromised data can be used in various unlawful ways, including opening new credit accounts.

69. The Plaintiff and Class Members have suffered significant harm due to the Defendant's conduct. Identity theft risks are serious, potentially leading to financial losses, damaged credit records, and even job or loan denials. To mitigate these risks, they must invest time and money in monitoring accounts, changing passwords, and procuring identity theft protection services.

70. Once Private Information is exposed, it cannot be fully secured against future misuse, necessitating ongoing vigilance. The value of their PII has been diminished, and they face increased risks of identity theft and financial fraud. Emotional distress and the continued vulnerability of their information in Defendant's systems exacerbate their situation.

71. The Plaintiff and Class Members did not receive the full benefit of their bargain, as the services provided were of diminished value due to inadequate data security. They would not have engaged with the Defendant had they known about the lack of proper security measures. In addition to economic harm, they have a vested interest in ensuring their Private Information remains secure and protected from further misuse.

## PLAINTIFF'S EXPERIENCE

72. Plaintiff Aushanique Lewis utilized Defendant's drug screening services, which required her to provide private information. She maintains this information securely and only shares it when necessary.

73. However, she would not have entrusted it to Defendant had she known about their inadequate data security policies.

74. Following the Data Breach, Plaintiff took reasonable steps to mitigate its impact, including verifying the breach, reviewing credit monitoring services, and monitoring financial accounts. This effort consumed significant time that could have been spent on other activities.

75. As a result of the breach, Plaintiff suffered actual injuries, including invasion of privacy, theft of her private information, lost time, and increased risk of future unauthorized access.

76. Additionally, Plaintiff believes her private information may have been disseminated on the dark web due to the breach. She anticipates ongoing expenses and time commitments to address these harms.

77. The breach has placed her at a heightened risk of identity theft and fraud for years to come. Plaintiff remains concerned about her information, which is believed to be stored by Defendant and vulnerable to future breaches.

## CLASS ALLEGATIONS

78. Plaintiff brings this action individually and on behalf of others similarly situated under Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

79. Specifically, Plaintiff proposes the following class definition, subject to any appropriate amendments: All individuals residing in the United States whose Private Information

was compromised in the Data Breach with DISA Global Solutions, Inc., LLC on or before February 9, 2024 (the “Nationwide Class”)

80. Excluded from the Classes are Defendant, its subsidiaries, officers, directors, any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families, all judges assigned to hear any aspect of this litigation, their immediate family members; and those individuals who make a timely and effective election to be excluded from this matter using the correct protocol for opting out.

81. The proposed class definition is based on current information and may be modified as necessary during discovery or when moving for class certification to reflect any new or changed facts.

82. **Numerosity**: The Class likely includes hundreds of thousands of members, with exact numbers and identities determinable from Defendant's records, including those related to the Data Breach.

83. **Commonality**: This action involves common questions of law and fact that predominate over individual issues. These include whether Defendant:

a) Failed to timely notify Plaintiff and Class Members of the Data Breach;

b) Had a duty to protect their personally identifiable information (PII);

c) Failed to safeguard PII adequately;

d) Was negligent in handling PII;

e) Violated laws by failing to notify of the breach;

f) Failed to implement reasonable security procedures;

g) Negligently caused the Data Breach;

h) Entered into an implied contract and breached it;

i) Was unjustly enriched;

j) Should provide damages or injunctive relief.

84. **Typicality**: Plaintiff's claims are typical of the Class, as they arise from the same unlawful conduct and legal theories. All Class Members had their PII exposed due to Defendant's actions.

85. **Policies Generally Applicable to the Class**: This class action is appropriate because Defendant's policies apply uniformly to the Class, necessitating consistent relief.

86. **Adequacy of Representation**: Plaintiff is an adequate representative, with no conflicting interests and competent counsel. Her claims align with those of the Class. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class Members are substantially identical as explained above.

87. **Superiority and Manageability**: Class action is superior due to impracticality of individual litigation, offering economies of scale and uniform decision-making. It allows for efficient adjudication without unnecessary duplication of effort and expense.

88. Class Action treatment is a superior approach for a fair and efficient adjudication, enabling numerous Class Members to pursue common claims simultaneously. It prevents unnecessary duplication and allows for modest claims to be litigated efficiently, which would otherwise be economically impractical for individual Class Members.

89. **Manageability**: The litigation is manageable due to Defendant's uniform conduct and consistent legal provisions, ensuring consistent outcomes and avoiding unnecessary duplication. The prosecution of this lawsuit as a class action presents no significant manageability issues.

90. Adequate notice can be provided to Class Members using information from Defendant's records.

91. Without a Class-wide injunction, Defendant may continue to fail in securing Class Members' private information, refuse proper notification regarding the data breach, and act unlawfully as alleged.

92. Class certification, injunctive relief, and declaratory relief are appropriate due to Defendant's actions affecting the Class as a whole.

93. Key issues suitable for certification include:

a) Whether Defendant timely notified the Plaintiff and Class of the data breach;

b) Whether Defendant owed a duty to exercise due care in handling private information;

c) The reasonableness of Defendant's security measures;

d) Whether Defendant's failure to implement adequate security was negligent;

e) Whether Defendant failed to take reasonable steps to safeguard private information;

f) Whether following FTC recommendations could have prevented the breach.

94. **Predominance** Common questions of law and fact predominate over individual issues, as similar violations, practices, and injuries are involved. Defendant's liability and damages are common to all Class Members.

95. Injunctive relief is appropriate due to Defendant's actions affecting the Class generally.

96. **Ascertainability** Class Members are ascertainable based on objective criteria and can be identified through Defendant's records.

## CAUSES OF ACTION

### FIRST COUNT -NEGLIGENCE AND NEGLIGENCE *PER SE*
### (On Behalf of Plaintiff and all Class Members)

97. Plaintiff incorporates by reference all preceding factual allegations.

98. Defendant owed Plaintiff and Class Members a duty of care to secure and safeguard their personally identifiable information (PII) using commercially reasonable methods. This duty arose when Defendant accepted and stored Plaintiff's and Class Members' PII on its systems.

99. Defendant's obligations included exercising reasonable care in obtaining, retaining, securing, and protecting PII; implementing industry-standard security procedures; promptly detecting and responding to data breaches; and notifying affected individuals of any security incidents. Defendant was aware that PII is private and confidential, and thus, it had a duty not to expose Plaintiff and Class Members to unreasonable risks of harm.

100. Defendant knew or should have known about the risks associated with collecting and storing PII, the vulnerabilities of its systems, and the importance of adequate security. Despite this knowledge, Defendant failed to ensure its systems were sufficient to protect PII. This failure constitutes a breach of its duties to Plaintiff and Class Members.

101. Defendant had independent duties under state and federal laws to safeguard PII and notify affected parties of breaches. These obligations are separate from any contractual

agreements. Defendant breached its general duty of care by failing to provide adequate security practices, timely disclose breaches, protect PII, and implement necessary security measures.

102. Defendant's breaches included failing to provide reasonable security systems, timely disclose breaches, protect PII, implement breach detection processes, encrypt PII, and train employees properly. These failures were wrongful, reckless, and grossly negligent, given the foreseeable risks and known threats.

103. As a direct result of Defendant's negligence, Plaintiff and Class Members have suffered damages and are at risk of additional harm. There is a close causal connection between Defendant's failure to implement security measures and the harm suffered. Defendant's actions constitute common law negligence.

104. Defendant violated 15 U.S.C. § 45 by failing to use reasonable measures to protect PII, contrary to industry standards and FTC guidelines. This conduct was particularly unreasonable given the nature and amount of PII involved.

105. As a direct and proximate result of Defendant’s negligence and negligence *per se*, Plaintiff and Class Members have been caused to suffer and will continue to suffer the continued risks of exposure of their PII, which the Defendant’s still possess and may result in further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII in its continued possession.

**SECOND COUNT – IMPLIED BREACH OF CONTRACT**
**(On Behalf of Plaintiff and all Class Members)**

106. Plaintiff incorporates by reference all preceding factual allegations.

107. By providing their personally identifiable information (PII) to DISA in exchange for drug screening services, Plaintiff and Class Members entered into implied contracts. These

contracts were based on the reasonable expectation that Defendant would protect their information with due care.

108. DISA actively solicited and invited Class Members to share their PII as part of its standard business practices. In response, Plaintiff and Class Members accepted these offers and provided their PII, trusting that Defendant would handle it securely.

109. In entering these implied contracts, Plaintiff and Class Members reasonably assumed that Defendant's data security practices complied with relevant laws, regulations, and industry standards. They also expected that Defendant would allocate sufficient resources to maintain adequate data security.

110. By providing services and payments to Defendant, Class Members relied on the understanding that Defendant would use part of its earnings to ensure robust data security measures. However, Defendant failed to meet these expectations.

111. The implied contract between Plaintiff, Class Members, and Defendant was predicated on the understanding that Defendant would keep their PII reasonably secure. Without this assurance, Class Members would not have entrusted their sensitive information to Defendant.

112. Furthermore, Class Members relied on Defendant's implied promise to monitor its systems and networks to ensure the adoption of reasonable data security measures.

113. Plaintiff and Class Members fulfilled their obligations under the implied contracts by providing their PII in good faith.

114. DISA breached these implied contracts by failing to safeguard and protect the PII of Class Members.

115. Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages resulting from the data breach.

116. Additionally, Plaintiff and Class Members seek injunctive relief, requiring Defendant to enhance its data security systems and monitoring procedures, undergo annual audits, and provide immediate and adequate credit monitoring to all Class Members. As a direct result of Defendant's breach, Class Members suffered damages, including the loss of the benefit of the bargain, as alleged herein.

**THIRD COUNT - BREACH OF FIDUCIARY DUTY**
**(On Behalf of Plaintiff and All Class Members)**

117. Plaintiff incorporates by reference all preceding factual allegations.

118. Given the special relationship between DISA and Plaintiff and Class Members, whereby Defendant assumed the role of healthcare provider and custodian of their personally identifiable information (PII), Defendant became a fiduciary.

119. This fiduciary role thereby imposed duties to safeguard Plaintiff and Class Members' PII, promptly notify them of any data breaches or disclosures, and maintain accurate records of stored information.

120. As a fiduciary, Defendant was obligated to act in the best interests of Plaintiff and Class Members, particularly in securing their PII. However, Defendant failed to fulfill these duties by not diligently discovering and investigating the data breach within a reasonable period of time.

121. Additionally, Defendant neglected to encrypt and protect the systems containing Plaintiff and Class Members' PII, thereby compromising their security.

122. As a direct and proximate result of Defendant's breaches of fiduciary duty, Plaintiff and Class Members have suffered and will continue to suffer significant harm. This includes actual identity theft, unauthorized disclosure of their PII, out-of-pocket expenses for identity theft prevention and recovery, lost productivity, and ongoing risks to their PII due to Defendant's inadequate protective measures. Furthermore, Plaintiff and Class Members will incur future costs and diminished value of services received from Defendant.

123. The consequences of Defendant's actions extend beyond financial losses, as Plaintiff and Class Members will also experience other forms of injury and economic and non-economic harm. These damages are a direct result of Defendant's failure to uphold its fiduciary obligations, leaving Plaintiff and Class Members vulnerable to ongoing risks and expenses.

**FOURTH COUNT - INTRUSION UPON SECLUSION/INVASION OF PRIVACY**
**(On Behalf of Plaintiff and All Class Members)**

124. Plaintiff incorporates by reference all preceding factual allegations.

125. The State of Texas recognizes the tort of Intrusion upon Seclusion; the formulation of that tort, found in the (Second) Restatement of Torts, states as follows:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.
>
> Restatement (Second) of Torts§ 652B (1977).

126. This claim holds liable those who intentionally intrude upon another's solitude or private affairs if the intrusion would be highly offensive to a reasonable person. Plaintiff and Class Members had a reasonable expectation of privacy in their personally identifiable information (PII), which Defendant mishandled.

127. Defendant's actions constituted a deliberate intrusion into Plaintiff's and Class Members' seclusion. By failing to safeguard their PII and intentionally misusing or disclosing it to unauthorized parties, Defendant invaded their privacy in a manner that would be highly offensive to an ordinary person. This invasion included publicizing private facts and causing significant anguish or suffering.

128. Given the foreseeability of harms from data breaches and their widespread occurrence, Defendant was substantially certain that its failure to implement adequate cybersecurity would lead to an invasion of Plaintiff's privacy.

129. Defendant knew that an ordinary person would find the exposure of their PII highly objectionable. By misusing and disclosing PII without consent, Defendant invaded Plaintiff's and Class Members' right to privacy.

130. Moreover, Defendant concealed and delayed reporting a security incident involving the misuse and disclosure of PII without consent. This failure to implement reasonable cybersecurity safeguards led to the publication of Plaintiff's and Class Members' PII on the dark web and through other channels, further exacerbating the invasion of their privacy.

131. As a direct result of Defendant's intentional actions, Plaintiff's and Class Members' reasonable expectations of privacy were severely compromised, causing substantial anguish and suffering. Defendant's conduct was malicious and oppressive, demonstrating a conscious disregard for Plaintiff's and Class Members' rights to confidentiality. Therefore, the Plaintiff seeks an award of damages on behalf of herself and the Class.

**FIFTH COUNT - IN THE ALTERNATIVE - UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members)**

132. Plaintiff repeats and re-alleges each and every preceding factual allegation.

133. Plaintiff brings this claim individually and on behalf of all Class Members. This count is pleaded in the alternative to the breach of implied contract count.

134. The Representative Plaintiff and Class Members conferred significant benefits upon Defendant by paying for services and providing their private information. In exchange, they expected to receive the services they paid for and have their private information protected with adequate data security measures.

135. DISA was aware of these benefits, accepted them, and profited from the transactions by using the private information for business purposes.

136. Defendant funds its data security measures from its general revenue, which includes payments made by or on behalf of the Representative Plaintiff and Class Members. A portion of these payments should have been allocated to provide a reasonable level of data security.

137. DISA, however, failed to secure the private information adequately, despite deriving revenue from it and relying on it for essential business functions.

138. Had the Representative Plaintiff and Class Members known about Defendant's inadequate security practices, they would not have provided their private information.

139. DISA enriched itself by diverting funds meant for data security to increase profits, using cheaper and ineffective measures instead. This decision directly and proximately harmed the Representative Plaintiff and Class Members.

140. As a result of Defendant's actions, the Representative Plaintiff and Class Members suffered various injuries, including invasion of privacy, theft of private information, lost value of

private information, time and opportunity costs to mitigate the breach, loss of benefit of the bargain, and increased risk to their private information. They have no adequate remedy at law.

141. Under principles of equity and good conscience, Defendant should not retain the money wrongfully obtained from the Representative Plaintiff and Class Members.

142. Therefore, the Defendant should be compelled to disgorge these proceeds into a common fund or constructive trust for the benefit of the Representative Plaintiff and Class Members, or refund the amounts overpaid for Defendant's services.

**SIXTH COUNT - DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF (On Behalf of Plaintiff and All Class Members)**

143. Plaintiff incorporates by reference all preceding factual allegations set forth.

144. Plaintiff brings this claim individually and on behalf of the Class. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court has the authority to declare the rights and legal relations of the parties and grant necessary relief. The Court also has broad discretion to restrain acts that are tortious and violate federal and state statutes, as described in this Complaint.

145. An actual controversy exists regarding the adequacy of Defendant's data security measures to protect Plaintiff's and Class Members' personally identifiable information (PII) following the data breach.

146. Plaintiff alleges that Defendant's current measures remain insufficient, leaving her and Class Members at imminent risk of further breaches. As a result, Plaintiff continues to suffer injury from the initial breach and faces ongoing risk of future compromises.

147. Under the Declaratory Judgment Act, this Court should enter a judgment declaring that Defendant owes a legal duty to secure clients' PII and notify them of breaches under common law and Section 5 of the FTC Act.

148. Furthermore, the Court should find that Defendant continues to breach this duty by failing to employ reasonable security measures. Correspondingly, the Court should issue prospective injunctive relief requiring Defendant to implement adequate security protocols consistent with law and industry standards to protect clients' PII.

149. Without an injunction, Plaintiff will suffer irreparable injury and lack an adequate legal remedy in the event of another breach. The risk of such a breach is real, immediate, and substantial.

150. If another breach occurs, Plaintiff will face significant identity theft and other damages, which cannot be readily quantified and would necessitate multiple lawsuits. In contrast, the cost to Defendant of complying with an injunction is relatively minimal, as it aligns with Defendant's pre-existing legal obligations.

151. Issuing the requested injunction will not disserve the public interest; rather, it will benefit the public by preventing future breaches and the resultant injuries to Plaintiff and Class Members. This aligns with the broader public interest in protecting confidential information and preventing harm from data breaches.

## JURY TRIAL DEMANDED

152. Plaintiff demands a trial by jury on all claims so triable.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant judgment as follows:

A. For an Order to certify this action as a class action and appoint Plaintiff and her counsel to represent the Class, ensuring that all affected parties are adequately represented and protected.

B. For equitable relief that enjoins Defendant from engaging in the wrongful conduct alleged herein, specifically the misuse and/or disclosure of Plaintiff's and Class Members' private information. Additionally, Defendant should be compelled to provide prompt, complete, and accurate disclosures to Plaintiff and Class Members regarding the data breach.

C. For equitable relief, compelling Defendant to implement and maintain robust methods and policies for client data collection, storage, and safety. Furthermore, Defendant should disclose with specificity the type of private information compromised during the data breach, ensuring transparency and accountability.

D. For injunctive relief, including but not limited to, the following measures necessary to protect the interests of Plaintiff and Class Members:

   i. Prohibiting Defendant from engaging in the wrongful and unlawful acts described herein.

   ii. Mandating Defendant to protect all collected data through encryption, in accordance with applicable regulations, industry standards, and federal, state, or local laws.

   iii. Requiring Defendant to delete, destroy, and purge the private information of Plaintiff and Class Members unless justified retention is demonstrated, balancing privacy interests against business needs.

iv. Compelling Defendant to establish and maintain a comprehensive Information Security Program to safeguard the confidentiality and integrity of private information.

v. Prohibiting Defendant from storing private information on cloud-based databases.

vi. Mandating Defendant to engage independent third-party security auditors and internal personnel to conduct periodic testing, including simulated attacks and penetration tests, and to promptly address any identified issues.

vii. Requiring Defendant to engage independent third-party security auditors and internal personnel for automated security monitoring.

viii. Mandating Defendant to audit, test, and train its security personnel on new or modified procedures.

ix. Requiring Defendant to segment data using firewalls and access controls to prevent unauthorized access across its network.

x. Mandating regular database scanning and security checks.

xi. Establishing an information security training program with at least annual training for all clients, tailored to their responsibilities in handling personal identifying information.

xii. Conducting routine internal training and education, including annual updates for security personnel on breach identification and response.

xiii. Implementing tests to assess clients' knowledge of education programs and compliance with policies.

xiv. Developing a threat management program to monitor networks for internal and external threats, ensuring monitoring tools are configured, tested, and updated.

xv. Educating Class Members about the risks associated with the loss of their confidential information and steps to protect themselves.

xvi. Implementing logging and monitoring programs to track server traffic.

xvii. Appointing an independent third-party assessor for a period of five years to conduct annual SOC 2 Type 2 attestations to evaluate Defendant's compliance with the Court's final judgment.

E. For equitable relief requiring restitution and disgorgement of revenues wrongfully retained due to Defendant's misconduct.

F. Ordering Defendant to provide at least five years of credit monitoring services for Plaintiff and the Class to mitigate potential financial harm.

G. For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined as allowable by law.

H. For an award of punitive damages, as allowable by law, to deter future misconduct.

I. For an award of attorneys' fees and costs, including expert witness fees, to compensate for the legal efforts expended in this matter.

J. Pre- and post-judgment interest on any awarded amounts at the prevailing legal rate.

K. Such other and further relief as this Court may deem just and proper.

Dated: March 3, 2025

Respectfully submitted,

/s/ *Tarak Anada*
Tarak Anada (TX Bar No. 24090576)
Jones Walker LLP
811 Main Street, Suite 2900
Houston, Texas 77002
Tel: 504-582-8000
Fax: 504-589-8322
Email: tanada@joneswalker.com

*and*

**WOODS LONGERGAN PLLC**
James F. Woods, Esq. (pro hac vice forthcoming)
Annie E. Causey, Esq. (pro hac vice forthcoming)
60 East 42nd Street, Suite 1410
New York, NY 10165
(212) 684-2500
jwoods@woodslaw.com
acausey@woodslaw.com

***Attorneys for Plaintiff***